*6/11/07 Adopted* /s/ *Judge Raymond J. Dearie*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED IN CLERKS OFFICE U.S. DISTRICT COURT E.D.N.Y. ★ 0 1 2001 ★

-------------------------------------------------------------x

TIME WARNER CABLE
OF NEW YORK CITY

                              Plaintiff,

-against-

AMPARO ALLIRIO, et al.,

                              Defendants.

-------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

**99-CV-2765 (RJD)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Time Warner Cable of New York City ("plaintiff") commenced this action against various defendants, including Antonio Castro ("Castro" or "defaulting defendant"). The uncontroverted complaint accuses him of unauthorized access to cable services, in violation of 47 U.S.C. §§ 553 and 605, as well as New York State law. Although Castro was properly served, he failed to answer the complaint or otherwise appear in this action. Subsequently, United States District Judge Raymond J. Dearie entered a default and referred the case to the undersigned to determine the amount of damages sustained by plaintiff. Thereafter, this Court directed that the parties file written submissions addressing the bases for plaintiff's claims and damages. Plaintiff complied with the Court's order, but the defaulting defendant never responded.

For the reasons set forth below, it is the recommendation of this Court that plaintiff be awarded $7,707 in damages, fees and costs against Castro.

## BACKGROUND

Plaintiff is a franchised cable television operator authorized to operate cable television systems in New York City. Complaint ("Comp.") ¶ 13. Plaintiff provides cable service to its

(41)

subscribers on a graduated scale as follows: basic or standard cable service contains the minimum number of services available to a subscriber for the lowest monthly fee; as premium services (including "pay-per-view" programming) are added to the basic service, the subscriber's monthly fee increases. Id. ¶¶ 14-16. In order to access the cable services, plaintiff provides the subscriber with an electronic device called a "converter," which attaches to the subscriber's cable line and allows the subscriber to view plaintiff's cable television services. Id. ¶ 17. Plaintiff's premium television services are "scrambled" to prevent unauthorized viewing of services to which a viewer has not subscribed. When a subscriber purchases premium services, plaintiff electronically modifies the subscriber's converter to "descramble" the incoming signals. Id. ¶¶ 18-20. However, it is possible to tamper with plaintiff's equipment or otherwise create a so-called "pirate" converter/decoder, which is illegally programmed to unscramble all programming. Such a device allows the user to receive all of plaintiff's scrambled programming without paying for the extra services. Id. ¶ 21.

As a result of an investigation into a business that was selling "pirate" converters, plaintiff obtained records that showed that Castro had purchased such a decoder on March 23, 1995. Affidavit of Thomas Allen dated March 24, 2000 ("Allen Aff.") ¶¶ 16-21. After purchasing the illegal converter, Castro would have been able to receive all of plaintiff's premium and pay-per-view programming, provided he subscribed to plaintiff's "standard" level of programming. The cost of the premium programming averaged about $55.00 per month, not including pay-per-view selections. Viewing every pay-per-view program one time during a particular month would cost a customer approximately $400.00. Id. ¶¶ 24-28. Prior to purchasing the illegal decoder, Rivera was a subscriber to plaintiff's standard programming

service at a rate of $41.61 per month. He continues to receive plaintiff's cable programming services. Id. ¶ 20.

## DISCUSSION

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973). Here, the complaint alleges that Castro intercepted plaintiff's cable programming without authorization, and the Court must determine whether plaintiff is entitled to relief under 47 U.S.C. §§ 553 and 605 (1994).

First, the Court will consider whether the allegations with respect to section 553 are well pleaded. Sections 553 and 605 were both enacted as part of the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, §§ 5(a), 5(e), 98 Stat. 2779, 2796, 2802, which amended the Communications Act of 1934, 47 U.S.C. § 151 et seq. Section 553(a)(1), which was specifically intended to deal with the growing problem of theft of cable service, provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator . . . .

47 U.S.C. § 553(a)(1). Section 553 has been uniformly held to apply in circumstances where, as here, a person without authorization intercepts cable services at his private residence. See, e.g., United States v. Norris, 833 F. Supp. 1392, 1404 (N.D. Ind. 1993), aff'd, 34 F.3d 530 (7th Cir. 1994); American Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993). Thus, plaintiff's complaint adequately alleges that it is entitled to relief under this section.

Plaintiff further alleges that Castro's unauthorized receipt of cable services also violated section 605(a), which provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person.

47 U.S.C. § 605(a). Plaintiff has stated that it receives the signals for its premium and pay-per-view programming via over-the-air transmissions from orbiting satellites and local radio towers. Compl. ¶ 20. Thus, such cable programming services constitute "radio communications," the unauthorized interception of which amounts to a violation of section 605(a). See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996).

The Court must next consider the appropriate measure of damages to be awarded plaintiff, keeping in mind that plaintiff may not recover under both section 605 and section 553 for the same violation.[1] See, e.g., McGinn, 817 F. Supp. at 320; cf. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Although a defendant, by defaulting, admits to all of the well-pleaded allegations pertaining to liability, the plaintiff must still provide evidence that substantiates the amount of damages actually suffered; it is within the court's discretion to determine whether that burden has been met. See, e.g., Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); Meehan v. Snow, 494 F. Supp. 690, 695 (S.D.N.Y. 1980), rev'd on other grounds, 652 F.2d 274 (2d Cir. 1981).

Acknowledging that "[w]ithout the aid of discovery plaintiff has not been able to learn the period of time that defendant intercepted its services following defendant's purchases of

---

[1] Similarly, this Court would not award damages for plaintiff's state law claims, since such an award would amount to a double recovery.

'pirate' decoding devices" (Allen Aff. ¶ 32), plaintiff seeks to recover $10,000 in statutory damages from the defaulting defendant, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which provides for a maximum award of $10,000 for each violation of section 605(a), "as the court considers just."[2]

Based on the circumstances of this case, an award of $10,000 against Castro is excessive. Castro first purchased the illegal converter on March 23, 1995. At the time plaintiff filed the complaint, he enjoyed unauthorized access to plaintiff's premium and pay-per-view programming for approximately 46 months. Having reviewed the circumstances of this case, as well as awards in similar decisions involving unauthorized interception by residential subscribers,[3] the Court "considers just" an award of $6,700 in statutory damages.

Plaintiff also seeks an award of costs and attorneys' fees pursuant to section 605(e)(3)(B)(iii). Specifically, plaintiff requests attorneys' fees aggregating $1,081.00 and expenses of $45.00. Affidavit of William B. Jung, Esq. ("Jung Aff."), at ¶¶ 5-6. The Court has reviewed the time sheets maintained by plaintiff's counsel (Exhibit D to Jung Aff.), as well as counsels' hourly rates (ranging from $85.00 to $160.00), and found most of the billing to be reasonable. However, the time sheets indicate that one Stephanie Korchinski billed for legal services related to the prosecution of this case as against defendant Socrates Romptis. Therefore, the Court recommends subtracting 1.4 hours from her billed time, which, at her rate, amounts to

---

[2] The statutory minimum award for each such violation is $1,000. 47 U.S.C. § 605(e)(3)(C)(i)(II).

[3] Cf. Comcast Cablevision v. Allen, No. 93 Civ. 1220, 1993 WL 501599, at *2-3 (E.D. Pa. Dec. 3, 1993) (awarding $1,000 for seven-to-eight month period); Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 109-10 (E.D.N.Y. 1997) (awarding $10,000 for six-year period).

$119.00. Accordingly, plaintiff should be awarded attorneys' fees and costs totaling $1,007.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that plaintiff be awarded $6,700 in statutory damages, plus attorneys' fees and costs totaling $1,007, as against defendant Castro.

Any objections to the recommendations contained herein must be filed with the Honorable Raymond Dearie on or before August 14, 2001. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to plaintiff's counsel and to Antonio Castro at 35-23 12th Street #4D, Long Island City, NY 11106.

**SO ORDERED.**

Dated:   Brooklyn, New York
         July 30, 2001

                                    ROANNE L. MANN
                                    UNITED STATES MAGISTRATE JUDGE